ELLIS, Judge.
Crown Zellerbach Corporation brought this suit to recover $6,768.56, the balance allegedly due it by International Grain Corporation for 97,600 paper bags manufactured to defendant’s specifications. The defendant refused to pay for or take delivery of the bags. After trial on the merits, the district judge rejected plaintiff’s demands and dismissed the suit. This appeal followed.
International was incorporated at about the time of the negotiations between the parties for the purpose of buying and processing soy bean and grain screenings and processing them into feed. R. C. Edwins, then an attorney in Kentwood, Louisiana, and a vice-president, director and shareholder in International, contacted Crown by letter asking that a salesman call. Bruce Albert Didier, Crown’s salesman, contacted him by phone and then made a call at International’s office in Kentwood, which was in the same building with Mr. Edwin’s office, but separate therefrom.
M. J. Phillips was introduced to Mr. Didier as the manager or general manager of the Corporation. At that time, and thereafter, most of the negotiations and discussions were carried on with Mr. Phillips. However, Mr. Edwins was present during some of them and was familiar with the fact that they were being carried on. He knew that the matter to be printed on the bags was discussed, and saw the sample layout which was prepared by Crown. He was present when Mr. Didier told Mr. Phillips that the best price rate could be obtained on an order of 72,000 bags or more, and Mr. Phillips told Mr. Didier that he wanted 100,000. In addition to having the art work done, Mr. Didier got a sample of the product to be placed in the bags, and after determining the density thereof, designed the bag so that it would meet defendant’s specifications.
Acknowledgements of the order, and. of two changes therein, both advantageous to defendant, were sent to defendant, and these clearly indicated that the quantity of bags ordered was 100,000. The acknowl-edgements further contained a statement, stamped on the faces thereof, that any bags picked up after September 30, 1965, would be charged for at the prevailing rate. The job was completed in less time than usual, at defendant’s request. 107,600 bags were manufactured, and according-to Mr. Didier’s uncontradicted testimony, defendant would be obligated to accept the overage under the custom prevailing in the trade.
Mr. Didier further testified that when defendant failed to take delivery of the bags as originally contemplated, he contacted Mr. Phillips, and eventually, International took 10,000 bags and paid for them. No more were ever picked up. Mr. Didier further testified that during subsequent negotiations with Mr. Phillips, and with Mr. Batson, the secretary of International, no *55 question was ever raised as to Mr. Phillips’ authority or the validity of the order.
No substantial question is raised as to the truthfulness of Mr. Didier’s testimony. The defense is that Mr. Phillips did not have the authority to order 100,000 bags on behalf of the corporation, and that the Board of Directors never authorized such a purchase. Mr. Edwins and Mr. Batson so testified. Mr. Batson stated that the purchase of 100,000 bags was discussed at the board meetings, but that no resolution was adopted authorizing same. He stated that he took notes at the Board meetings, but never transcribed them into formal minutes, and no minutes were offered in evidence. It is their testimony that they were trying to arrange for a source of supply for bags which they would pick up in 10,000 or 20,000 lots at a time, but that they never intended to order or authorize an order for 100,000 bags.
Mr. Phillips did not testify, nor was he subpoenaed. In explanation of this, defendant entered a statement by Mr. Edwins and Mr. Batson in the record to the effect that there were a number of suits pending against Mr. Phillips and the Sheriff of his Parish had been unable to effect service on him, and that if they had issued a subpoena it would not have been served. The statement is further to the effect that Mr. Phillips had promised both of them he would appear in Court. Earlier, on cross examination, Mr. Edwins had testified that he didn’t issue a subpoena because Mr. Phillips had called him and told him his car was broken down and he couldn’t come to Court.
After reviewing the record in its entirety, we can only come to the conclusion that the conclusion reached by the district judge was manifestly erroneous. It is admitted by all parties that Mr. Phillips was the manager of the corporation. There is no doubt that Mr. Phillips had an office and a secretary in Kentwood, separate from Mr. Edwin’s office. There is no doubt that extensive negotiations were carried on relative to the size of the bags to be used, the weight of the bags, and the material to be printed thereon, and that Mr. Edwins and the Board were aware of these negotiations. The invoices and acknowledgements which form part of the record show clearly that the order which was being acknowledged was one for 100,000 bags.
In addition, we believe that the failure to call Mr. Phillips to testify is fatal to defendant’s case. No effort was made to subpoena him, although he was within the subpoena power of the Court, and apparently both Mr. Batson and Mr. Edwins were able to get in touch with him by telephone. We can only assume that whatever testimony he would give would be adverse to the interest of the defendant.
It seems clear to us that this was a business transaction carried out in the ordinary course of business and in the ordinary manner of business by Crown Zeller-bach and International Grain Corporation. We feel that Mr. Phillips was clothed with the apparent authority throughout the negotiations and that the only thing which prevented the consumation of the transaction was the fact that defendant got into financial difficulties.
Defendant further contends that there was no contract between the parties because no price was agreed on. The original contract price was $65.50 per thousand. Crown claims that it can charge that amount because of the stipulation on the acknowledgements to the effect that bags not picked up on or before September 30, 1965, would be billed at the rate prevailing at the time of delivery. There is nothing inherently objectionable about such a stipulation, but the market price is a fact which must be proved. Princeville Canning Co. v. Hamilton, 159 So.2d 14 (La.App. 1 Cir. 1963). No such proof was offered in this case beyond the bare statement of Mr. Didier to the effect that $69.-35 per thousand was the market price at the time at which the invoice was sent to the defendant. This is not sufficient to satisfy the burden of proof required. Hav *56 ing failed to show a change in the market price, plaintiff’s recovery is limited to the original contract price. 97,600 hags remain on hand with the plaintiff, and the contract price is $65.50 per thousand. Plaintiff is therefore entitled to recover the sum of $6,392.80.
For the above reasons, the judgment appealed from is reversed, and there will he judgment in favor of plaintiff, Crown Zel-lerbach Corporation, and against defendant, International Grain Corporation, in the sum of $6,392.80, with legal interest from date of judicial demand until paid, and for all costs, both in this court and the court below.
Reversed and rendered.